IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL KOTCHO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1452 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM ORDER

CONTI, District Judge

*Introduction*

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Michael Kotcho ("plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, *et seq.* Plaintiff contends that the decision of the administrative law judge (the "ALJ") that he is not disabled, and therefore not entitled to benefits, should be reversed because the decision is not supported by substantial evidence. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Because the ALJ may have misconstrued plaintiff's prior periods of sobriety reflected in the record and did not explain why certain medical opinions were not credited, the court will remand this case for further proceedings consistent with this Memorandum Order.

*Procedural History*

Plaintiff filed the application at issue in this appeal on March 26, 2002, asserting a disability since November 25, 2000 by reason of major depression. (R. at 107-09.) Plaintiff did not attend his scheduled consultative exam and he was denied at the initial level (R. at 78-81.) Plaintiff then filed a request for a hearing. (R. 82.) He failed to appear at the scheduled hearing and his application was dismissed on March 27, 2003. (R. at 74-75.) Plaintiff requested review asserting that inclement weather caused his failure to attend the scheduled hearing. (R. at 91.) The Appeals Council remanded in order for a hearing to be held. (R. at 92-94.) On remand a hearing was held on January 16, 2004, before the ALJ. (R. at 47-69.) Plaintiff appeared at the hearing and testified. (R. at 49-65.) A vocational expert (the "VE") also testified. (R. at 65-68.) Plaintiff was represented by an attorney at the hearing (R. at 47.) In a decision dated February 6, 2004, the ALJ determined that plaintiff was not disabled and, therefore, not entitled to benefits. (R. at 33-42.) Plaintiff timely requested a review of that determination and by letter dated August 11, 2004, the Appeals Council denied the request for review. (R. at 5-7.) Plaintiff subsequently commenced the present action seeking judicial review.

*Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Plaintiff's Background and Medical Evidence*

Plaintiff was born on June 27, 1948 and was fifty-five years old at the time of the hearing before the ALJ. (R. at 49.) He is divorced and does not live alone. (Id.) He was living in a half-way house at the time of the hearing before the ALJ. (R. at 53.) Plaintiff finished tenth grade and does not have problems reading or writing. (R. at 50.) At the time of the hearing, despite an extensive history of alcohol dependency, plaintiff had been sober for two years. (R. at 51.) Plaintiff asserts that for essentially his entire life he had suffered from depression and is not able to concentrate and becomes confused. (R. at 50.) He gets anxious and has had panic attacks in the past. (R. at 52.) He tried suicide a few times in the past. (R. at 52.)

His prior work consisted primarily of working in restaurants and in a parking garage. (R. at 54.) At the half-way house, plaintiff takes care of himself and engages in activities for himself, such as cooking, washing dishes, making his bed, vacuuming, taking out the trash and watching TV. (R. at 55-56.) Plaintiff has a driver's license, but does not drive. (R. at 56.) He

no longer paints as he did before and does not have any hobbies. (R. at 56.) Plaintiff does not have problems getting along with people. (R. at 58-59.) He lost interest in life, feels helpless, worthless, guilty and without energy, but not all the time. (R. at 59). He sees a psychiatrist, Dr. Danko, once per month and a therapist two times per week. (R. at 60.)

Physically, plaintiff suffers from high blood pressure, diabetes, and cholesterol. (R. at 60.) His primary care physician, Dr. Abrams, advised plaintiff that he was getting better physically with the medication. (R. at 61.) His psychiatrist told him that he needs to stay on his medications for "at least the next year." (R. at 61.) His doctors did not suggest any additional treatment change or medications or different therapies. (R. at 61.) A case manager brought him to the hearing before the ALJ and helped him with appointments. (R. at 63.) Plaintiff also attends Alcoholics Anonymous ("AA") meetings two to three times per week. (R. at 64.)

Plaintiff's medications include Remeron for major depression, Effexor and trazodone. (R. at 174.) His medical records include evidence of acute alcoholism. He was discharged on August 5, 1977, by Saint Francis General Hospital with a diagnosis of acute alcoholism and chronic alcoholism. (R. at 178.) At the time of the discharge, the notes of Dr. S. Kosco reflect that plaintiff had been in an AA program from 1974 and had <u>experienced periods of sobriety for nine months and nineteen months</u>. (R. at 179)(emphasis added).

Plaintiff was admitted to Saint Francis Hospital on June 26, 1981 and discharged on July 1, 1981, with a diagnosis of acute alcohol intoxication and alcohol addiction. (R. at 183.) He was admitted to Saint Francis Hospital on September 12, 1981 and discharged on October 13, 1981. His admitting diagnosis was suicidal ideation and the diagnosis was situational depression and alcohol and drug dependency. (R. at 180.)

Plaintiff was admitted to University of Pittsburgh Medical Center (" UPMC") Health System, Western Psychiatric Institute and Clinic on July 14, 2000 and discharged on July 19, 2000. (R. at 253.) He was admitted on a 201 commitment. His psychiatric history included "worsening depressive symptoms, including suicidal ideation with thoughts of going to a hotel room and overdosing." (R. at 253.) His global assessment of functioning ("GAF") score at the time of discharge was 60. (R. at 257.) The July 14, 2000 medical notes of UPMC Health System, Western Psychiatric Institute and Clinic reflect two previous suicide attempts one in the 1970s and one in 1986. (R. at 261.)

He was admitted to Saint Francis Hospital on August 1, 2000 and discharged on August 11, 2000. His diagnoses were polysubstance dependence, alcohol dependence and mixed personality disorder. (R. at 185.) Dr. Soraya Radfar, with respect to plaintiff's discharge on August 11, 2000 from Saint Francis Hospital, noted that he had a history of polysubstance abuse and dependence,

> [w]as in Western Psych in 1974 and was detoxed, was sober for two years and had started back drinking off and on, but not used any other drugs. Periodically, he has had outpatient treatment for depression, on Paxil. Recent hospitalization in 07/00 at Western Psych and discharged on Paxil 40 mg p.o. q.d. Was admitted at this time on a 201 due to depression and suicidal ideations along with auditory hallucinations.

(R. at 188)(emphasis added). A mental examination of plaintiff at that time reflected: "The plaintiff was casually dressed, appeared stated age, was confused, disorganized. Speech was slow. Affect was blunted. Mood was low. Positive auditory hallucinations, positive suicidal ideations with a plan to jump off a bridge. Insight and judgment were limited." (Id.)

He was admitted to UPMC Health System, Western Psychiatric Institute and Clinic on September 27, 2000 and discharged on October 13, 2000.  (R. at 242.)  In plaintiff's psychiatric history he reflected a "<u>relapse into alcohol use after 12 years of remission</u>."  (R. at 242)(emphasis added).  He also had suicidal ideation and depression.  (R. at 242.)

On February 8, 2001, plaintiff had a psychiatric evaluation at UPMC Health System, Western Psychiatric Institute and Clinic.  (R. at 231.)  Plaintiff reported "having suicidal thoughts with a plan to shoot self with a gun."  (R. at 232.)  He was admitted on March 3, 2001, to the Western Psychiatric Institute and Clinic on a 201 commitment.  (R. at 221.)   The primary psychiatric problem was depression and Klonopin withdrawal.  (R. at 221.)  He was discharged on March 6, 2001 and had marked improvement.  (R. at 226.)  His GAF score at the time of discharge was 60.  (R. at 227.)

On April 6, 2001, plaintiff was admitted to UPMC Health System, Western Psychiatric Institute and Clinic and he was discharged on April 16, 2001.  (R. at 213.)  He was admitted "due to depression, suicidal ideation with a plan to take the bridge and not eating or sleeping."  (R. at 213.)  At the time of his admission he had not been compliant with his medications including Remeron.  He had a past GAF score of 15 and a current GAF score at the time of discharge of 55.  (R. at 216.)  On April 6, 2001, plaintiff had a limited psychiatric evaluation at the Western Psychiatric Institute and Clinic.  (R. at 218.)  His chief complaint was depression and he reported "increasing depressive symptoms and increased feelings of anxiety."  (R. at 218.)  It was noted that plaintiff was "using alcohol as a sleep agent and has been off of his medications x 10 days (reports having lost pills due to inability to concentrate)."  (R. at 219.)

6

Plaintiff was again admitted to Saint Francis Medical Center on November 13, 2001 and discharged on November 19, 2001. (R. at 190). The principal diagnosis was recurrent major depression and alcohol dependence. (R. at 190). He was admitted on a 201 commitment for evaluation of depression and drug use. (R. at 191.) He reported that he was feeling depressed and had no appetite or energy, felt worthless and guilty. (R. at 191.) He also reported wanting to "jump off the bridge." (R. at 191.) He reported that his depression had recently increased. (R. at 191.) Plaintiff also advised that he had not been compliant with his medications – Effexor and Remeron. (R. at 191.) He had a GAF score of 35 on admission and a GAF score of 45 on discharge. (R. at 192-93.)

On February 10, 2002, at the UPMC, Western Psychiatric Institute and Clinic, plaintiff was seen for a psychiatric evaluation. (R. at 202-05.) Plaintiff's chief complaint was "depression . . . thinking about suicide." (R. at 202.) It was noted that his strengths/assets were "<u>has previous amount of clean time (12 years)</u>, expresses desire to get sober." (R. at 203)(emphasis added). At the time of assessment his GAF score was 25. (R. at 204.) He indicated that he had been non-compliant with his medications – Effexor and Remeron – for two months. (R. at 203.)

Plaintiff was admitted to Western Psychiatric Institute and Clinic on February 23, 2002 and discharged on March 4, 2002. He was admitted because of an overdose. He had depression and suicidal ideation. (R. at 265.) At the time of his admission on February 23, 2002, it was noted that he had a history of noncompliance with his medications. (R. at 272.) The medical condition was an Effexor overdose. (R. at 272.) He was diagnosed at the time of discharge on

March 4, 2002 with major depression recurrent, severe, without psychoses. (R. at 268.) At the time of discharge, he had a GAF score of 50. (R. at 268.)

On June 3, 2002, at the UPMC, Western Psychiatric Institute and Clinic, plaintiff was seen by Dr. Jason Rosenstock. The history taken by Dr. Rosenstock reflected that <u>plaintiff was sober from 1984 through 1999</u>, although plaintiff "[s]till had periods of depression, often associated w/anxiety, put [sic] did well overall." (R. at 481.) Plaintiff's history also reflected that he had relapsed in 1999. The diagnoses reported by Dr. Rosenstock were "Major Depressive Disorder, severe, recurrent, w/o psychotic features (remission)" and "Alcohol dependence (early full remission, mostly in controlled environment)" and "Sedative-hypnotic abuse." (<u>Id.</u>)

Douglas Schiller, Ph.D., signed a psychiatric review technique form on August 8, 2002. (R. at 293-306.) The psychiatric review form, however, was not completed because plaintiff failed to appear for the exam. (R. at 305.)

On August 18, 2003, Steven Pacella, Ph.D., performed a psychological disability examination of plaintiff. He noted that plaintiff was "a somewhat unreliable historian." (R. at 307.) Dr. Pacella reviewed a history of certain medical events including a medical examination performed on March 3, 2001. (R. at 308.) In the history provided by plaintiff to Dr. Pacella, Dr. Pacella noted that plaintiff "reported 'liver damage' as a function of alcohol abuse from age 16 (<u>from which he has been 18 months abstinent</u>)." (R. at 307-08)(emphasis added).

The diagnoses reported by Dr. Pacella included alcohol dependence and major depression, recurrent. (R. at 310.) Dr. Pacella noted plaintiff's prognosis was "[p]oor, for any change in behavior." (R. at 310.) Dr. Pacella noted with respect to effects on function that plaintiff "is aware of hazards, can take precautions and can make simple decisions but seems

very poorly equipped (today) to work within a schedule, attend to a task or to sustain any consistent, competitive routine." (R. at 311.) Dr. Pacella noted only slight to moderate limitations with respect to ability to understand, remember and carry out instructions, but that there were <u>marked limitations</u> in plaintiff's ability to respond appropriately to supervision, co-workers and work pressures in a work setting affected by the impairment. (R. at 312.) In response to the question:

> If you have concluded that the medical record indicates that the claimant's alcohol and/or substance use/abuse contributes to any limitations as set forth above, please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance use/abuse.

Dr. Pacella underlined the phrase: "<u>if the claimant was totally absent from alcohol and/or substance use/abuse</u>, and wrote in his answer "still suffers from major depression." (R. at 313.)

The progress note by Dr. Timothey Denko on August 18, 2003, reflected that plaintiff had a GAF score of 65 and that plaintiff reported: "[C]<u>ontinuous abstinence from substances x 18 months</u>. Reports he has not felt this good for many years." (R. at 335)(emphasis added).

The ALJ posed the following hypothetical to the VE:

> Assume that I find the Claimant is 55 years old and has a tenth grade education. Assume further that I find he can perform any exertional level but is further limited by the following. The first one would be to deal with the public. The second, to have minimal interaction with peers and supervisors. The third one to make complex decisions. The fourth one to follow detailed instructions. The fifth one to cope with the stress in critical situations. And the sixth one to adapt to frequent changes in a work setting. Would there be any jobs he could perform with those limitations?

(R. at 67.) The VE advised that the person reflected in the hypothetical could perform jobs, including unarmed guards, document preparers, and janitorial positions. (<u>Id.</u>) Plaintiff's attorney

asked the VE whether a person could work with the following limitations: "[An] individual is very poorly equipped to work within a schedule, attend to tasks or to sustain consistent employment . . . . [M]arked limitations in regard to dealing with the public, supervisors and co-workers, dealing with work pressures or any changes in the work place." (R. at 68.) With those further limitations, the VE said the hypothetical individual would not be able to work. (Id.)

## *Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. § 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past

relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns v. Burnhart, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on November 25, 2000; (2) plaintiff suffers from major depression and has a lengthy history of alcohol dependency, which are severe; (3) his alcohol dependency impairment met the requirements of Medical-Listing 12.09B (Substance Addiction Disorders), but his other impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff could perform. (R. at 41-42.) The ALJ also found that plaintiff's alcohol dependency is a contributing factor material to the finding of disability. (R. at 41.)

The ALJ noted that the medical evidence indicated: "[T]he claimant suffers from major depression and has a lengthy history of alcohol dependency." (R. at 35.) The ALJ took issue with plaintiff's counsel's assertion that the plaintiff's depression was unabated because for lengthy periods of time plaintiff was engaged in substantial gainful activity, *i.e.,* from 1989 through 1999. He also stated that plaintiff "admitted to Dr. Pacella that he has been abusing alcohol '. . . from age 16 (from which he has been 18 months abstinent).'" (R. at 35.) The ALJ

concluded from that admission that plaintiff had been sober during the prior forty years for only eighteen months. The ALJ stated: "I do not consider 18 months of abstinence over the preceding forty years to be a long period of sobriety." (R. at 35.) The ALJ commented on Dr. Pacella's findings that the plaintiff suffered from alcohol dependency, major depression, recurrent and other matters and Dr. Pacella's conclusions that plaintiff was poorly equipped to work within a schedule, attend to tasks or sustain any consistent competitive routine. (R. at 35-36.)

The ALJ found that but for plaintiff's alcohol dependency, he was capable of performing a significant number of jobs in the national economy. (R. at 37.) The ALJ also found plaintiff's "alcohol abuse/dependency to be a contributing factor material to my determination of disability." (R at 37.) The ALJ acknowledged that medical records from July 2000 indicated twelve years of sobriety, but the ALJ concluded that was inconsistent with plaintiff's own statement to Dr. Pacella that since age sixteen he had only eighteen months of sobriety. (R. at 39.)

The ALJ found plaintiff's "statements less than credible." (R. at 39.) He noted daily activities including plaintiff being able to care for himself, being able to do household chores, to cook, to clean, and to do grocery shopping. The ALJ recognized that plaintiff had depression, but questioned the extent of the limitations and, in recognition of the depression, presented a number of limitations for consideration by the VE including "limiting his exposure to the general public and co-workers." (R. at 39.)

Plaintiff argues that the ALJ's decision is not supported by the substantial evidence because: 1) the ALJ did not properly consider uncontroverted medical evidence of record and drew conclusions that were not supported by that medical evidence and 2) and the hypothetical

relied upon by the ALJ was defective because it did not include all plaintiff's limitations. Defendant disputes plaintiff's arguments and asserts that substantial evidence supports the ALJ's findings.

### a. *Medical evidence of record*

Plaintiff argues that contrary to the ALJ's conclusion that plaintiff admitted to only eighteen months of sobriety over a forty year history, plaintiff, in fact, had long periods of sobriety which were reflected in the medical records, *i.e.*, the period of sobriety from 1984 to 1999. Plaintiff also asserts that the ALJ failed to credit certain limitations found by Dr. Pacella.

An administrative law judge has an affirmative duty to develop the record. Lilly v. Barnhart, 2004 WL 875545, *4 (E.D.Pa.,2004) (citing Sims v. Apfel, 120 S.Ct. 2080 (2000); Plummer v. Apfel, 186 F.3d 422 (3d Cir.1999); Ventura v. Shalala, 55 F.3d 900 (3d Cir.1995)). If there is contradictory medical evidence in the record, an administrative law judge may reject probative evidence, but must explain the basis for her decision. If an administrative law judge believes that the medical evidence is unclear with respect to whether a claimant is suffering from a condition with symptoms as severe as were alleged, an administrative law judge should consider securing additional evidence. See Kent v. Schweiker, 710 F.2d 110, 114-15 (3d Cir. 1983). A consultive exam may be advisable to clarify any discrepancy. See 20 C.F.R. §§ 404.1517; 404.1519(a), (b); 416.916(a), (b); 416.917.

A review of Dr. Pacella's recitation of plaintiff's history reflects a notation of an eighteen-month period of abstinence. Dr. Pacella's statement, however, can be read two ways. It can mean that at the time plaintiff was seen by Dr. Pacella he had been sober for the prior eighteen months or it can be read – as the ALJ read that statement – to mean plaintiff had been

sober only eighteen months in his history. Since the ALJ appears to have relied heavily on the conclusion that plaintiff had only an eighteen-month period of sobriety and the statement in Dr. Pacella's notes that the ALJ relied upon for that conclusion is ambiguous, and given the other medical evidence in the record which reflects extensive periods of sobriety, the matter needs to be remanded to the ALJ to develop the record with respect to whether plaintiff had extensive periods of sobriety. See Schwartz v. Halter, 134 F.Supp.2d 640, 656 (E.D. Pa. 2001) (administrative law judge's duty to develop fully the record "exists even when the claimant is represented by counsel. . . .").

An administrative law judge is required to review all the evidence presented and explain why he rejects probative conflicting evidence. In Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983), the court noted:

> While the ALJ is, of course, not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.

The ALJ did not comment on Dr. Rosenstock's examination which reflected a period of sobriety from 1984 to 1999 and also that plaintiff's major depression existed after his recent period of sobriety beginning in February 2002. (R. at 481.) The ALJ also did not comment on Dr. Pacella's finding that even if totally abstinent from alcohol plaintiff "still suffers from major depression." (R. at 313.) Dr. Pacella's finding supports the conclusion that plaintiff would be markedly limited in significant ways, regardless of his prior alcohol dependency. (R. at 312.) The ALJ did not explain in the opinion why Dr. Pacella's finding was disregarded or not given

any weight. Again, perhaps the ALJ's understanding of the length of sobriety affected the ALJ's impression of Dr. Pacella's finding.

Given the reliance of the ALJ on the prior length of plaintiff's sobriety, it would be important for the ALJ to explore and expand the record with respect to what periods plaintiff had been sober. It is particularly important for the record to be further developed given the longitudinal history of depression which continued through plaintiff's most recent period of sobriety and the conclusion of Dr. Pacella that plaintiff's limitations would continue even in he had been abstinent from alcohol. The court concludes the case must be remanded for the ALJ to make findings with respect to the periods of sobriety experienced by plaintiff. The ALJ should also consider Dr. Pacella's opinion on the limitations existing even in the absence of alcohol dependency and explain what weight should be given to that conclusion.

### b. *Defective hypothetical*

"'[A] vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" Burns v. Barnhart, 312 F.3d at 123 (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). A hypothetical question posed to a vocational expert must include all of a claimant's impairments that are supported in the record. Id.

The plaintiff argues that the hypothetical posed to the VE which was relied upon by the ALJ was defective because it did not include all of the limitations contained in the September 2000 report of Dr. Pacella. In light of the foregoing discussion, the ALJ on remand should consider whether additional limitations need to be included in the hypothetical, especially with

respect to Dr. Pacella's finding that limitations would exist even if plaintiff were abstinent from alcohol.

Plaintiff argued that a remand is not necessary. The court, however, finds that a remand is necessary in order for the record to be developed with respect to plaintiff's prior periods of sobriety and the extent of limitations that would exist regardless of his past alcohol dependency.

*Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that the ALJ needs to develop the record relating to plaintiff's prior periods of sobriety and the limitations noted by Dr. Pacella. The decision of the ALJ denying plaintiff's application for DIB is remanded for further proceedings consistent with this opinion.

Therefore, plaintiff's motion for summary judgment (Docket No. 6) is **DENIED**, and defendant's motion for summary judgment (Docket No. 9) is **DENIED**.

**IT IS ORDERED AND ADJUDGED** that this case shall be remanded to the Commissioner for further proceedings consistent with this opinion.

The clerk shall mark this case as closed.

                                          By the court:

                                          /s/ Joy Flowers Conti
                                          Joy Flowers Conti
                                          United States District Judge

Dated: March 31, 2006
cc: Counsel of Record